[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-12161
Non-Argument Calendar

————————————————

D.C. Docket No. 5:12-cv-00573-JSM-PRL

JAMAL ABU SAMAK,

Petitioner-Appellant,

versus

WARDEN, FCC COLEMAN - MEDIUM,

Respondent-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(September 10, 2014)

Before PRYOR, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Jamal Samak, a federal prisoner proceeding *pro se*, appeals the district

court's dismissal for lack of jurisdiction of his 28 U.S.C § 2241 habeas corpus

petition challenging his convictions and total sentence of life imprisonment, imposed after a jury found him guilty of one count of conspiracy to violate the Organized Crime Control Act of 1970 ("OCCA"), in violation of 18 U.S.C. § 371; and one count of violating the OCCA through destruction by fire, in violation of 18 U.S.C. § 844(i). The district court's dismissal was based on its conclusion that Samak had failed to establish the necessary conditions for his claims to satisfy the savings clause in 28 U.S.C. § 2255(e) such that they might be considered in a § 2241 petition.

On appeal, Samak argues that because the version of § 844(i) in effect at the time of his conviction and sentencing required a jury recommendation to impose a life sentence, and because the jury did not provide such a recommendation, the district court erred in sentencing him to life imprisonment. He also argues that his counsel was ineffective for failing to advise him to enter into a plea agreement.[1] He provides no argument as to why either of these claims satisfies the savings clause.

---

[1] Samak also argues on appeal that (1) the government lacked federal jurisdiction under § 844(i) to prosecute him for arson involving "uncontained gasoline"; (2) it was inappropriate and prejudicial for the district court and his trial counsel to engage in "verbal gunfights in [the] presence of the jury without requesting a sidebar conference"; and (3) the district court improperly imposed a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. However, because he did not raise these issues in the district court, we will not consider them. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (stating in a civil case that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court" (quotation marks omitted)). Likewise, we also will not consider the issues he raised in the district court but did not brief on appeal. *See id.* at 1330 (stating that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed").

2

Upon a thorough review of the record, and after consideration of the parties'
briefs, we affirm.

Whether a prisoner may bring a § 2241 petition under the savings clause of
§ 2255(e) is a question of law that we review *de novo*. *Bryant v. Warden, FCC
Coleman-Medium*, 738 F.3d 1253, 1262 (11th Cir. 2013). The applicability of the
savings clause is a threshold jurisdictional issue, and the savings clause imposes a
subject-matter jurisdictional limit on § 2241 petitions. *Williams v. Warden, Fed.
Bureau of Prisons*, 713 F.3d 1332, 1337-38 (11th Cir. 2013). The petitioner bears
the burden of demonstrating that the § 2255 remedy was "inadequate or ineffective
to test the legality of his detention" for purposes of § 2255(e). *Mackey v. Warden,
FCC Coleman-Medium*, 739 F.3d 657, 661 (11th Cir. 2014). *Pro se* pleadings are
liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir.
1998).

Under § 2241, a district court has the power to grant a writ of habeas corpus
to a prisoner in custody in that district. 28 U.S.C. § 2241(a), (d). This power is
limited by § 2255(e), which states,

> An application for a writ of habeas corpus in behalf of a prisoner who
> is authorized to apply for relief by [a § 2255 motion], shall not be
> entertained if it appears that the applicant has failed to apply for relief,
> by motion, to the court which sentenced him, or that such court has
> denied him relief, unless it also appears that the remedy by motion is
> inadequate or ineffective to test the legality of his detention.

3

28 U.S.C. § 2255(e). "An application for a writ of habeas corpus" includes a petition filed under § 2241. *Bryant*, 738 F.3d at 1262.

When a prisoner previously has filed a § 2255 motion to vacate, he must apply for and receive permission from the court of appeals before filing a successive § 2255 motion. 28 U.S.C. §§ 2244(b), 2255(h). Such restrictions on successive § 2255 motions, standing alone, do not render that section "inadequate or ineffective" within the meaning of the savings clause. *Gilbert v. United States*, 640 F.3d 1293, 1307-08 (11th Cir. 2011) (*en banc*). In *Wofford*, we stated that a petitioner meets the requirements of the savings clause when: (1) the petitioner's claim is based on a retroactively applicable Supreme Court decision; (2) the holding of that Supreme Court decision establishes that the petitioner was convicted of a nonexistent offense; and (3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised at the petitioner's trial, appeal, or first § 2255 motion. *Wofford v. Scott*, 177 F.3d 1236, 1244 (11th Cir. 1999).

In *Williams*, we held that *Wofford* resolved Williams's appeal because he could not show that our caselaw foreclosed his objection to treating his two Florida burglary convictions as violent felonies under the ACCA. *Williams*, 713 F.3d at 1343-44. We stated that *Wofford* established two necessary, but not necessarily sufficient, conditions for a sentencing claim to pass muster under the savings

4

clause:  (1) "the claim must be based upon a retroactively applicable Supreme Court decision"; and (2) "the Supreme Court decision must have overturned a circuit precedent that squarely resolved the claim so that the petitioner had no genuine opportunity to raise it at trial, on appeal, or in his first § 2255 motion." *Id.* at 1343.  We held that there was no circuit precedent during Williams's direct and collateral attacks that "squarely held" that the Florida offense of burglary of a dwelling, which Williams was now contending was not a predicate offense, was a violent felony for ACCA purposes.  *Id.* at 1344-45.  Thus, Williams could have challenged the use of his burglary of a dwelling convictions as predicate offenses in his original § 2255 motion, and his § 2255 motion was not "an ineffective test of his claims."  *Id.* at 1345.

In responding to Williams's argument that *Begay*[2] was the "circuit-law busting, retroactively applicable Supreme Court decision" required by *Wofford*, we clarified that the Supreme Court case must be "circuit-law busting" in that it overturned circuit precedent that specifically addressed the claim the prisoner now asserts. *Id.* at 1346-47.  We concluded that "*Begay* is not circuit law-busting in *Wofford*'s sense of the term" because it "changed the analytical framework for determining whether a given state offense is a violent felony at a high level of abstraction by crafting its 'purposeful, violent, and aggressive' test," but "[i]t did

---

[2]    *Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008).

5

not abrogate all of this Court's pre-*Begay* violent felony jurisprudence." *Id.* at 1347.

In *Bryant*, we held that for a petitioner to bring a § 2241 challenge to the legality of his detention on the ground that a prior state conviction had been improperly designated a predicate offense for purposes of the ACCA, he must make a five-part showing that a prior § 2255 motion was "inadequate or ineffective to test the legality of his detention." *Bryant*, 738 F.3d at 1274. First, a petitioner must show that, "throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit's binding precedent had specifically addressed [his] distinct prior state conviction that triggered § 924(e) and had squarely foreclosed [his] § 924(e) claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a)." *Id.* Second, a petitioner must identify a Supreme Court decision announced after his first § 2255 proceeding that overturned this Court's precedent "that had squarely foreclosed [his] § 924(e) claim." *Id.* Third, he must show that the Supreme Court's new rule applies retroactively on collateral review. *Id.* Fourth, he must show that, as a result of the new rule being retroactive, his current sentence exceeds § 924(a)'s ten-year statutory maximum. *Id.* Finally, he must show that "the savings clause in § 2255(e) reaches his pure § 924(e)[] error claim of illegal detention above the statutory maximum penalty in § 924(a)." *Id.*

6

The version of 18 U.S.C. § 844(i) in effect at the time of Samak's conviction and sentencing provided,

> Whoever maliciously damages or destroys . . . by means of fire . . . any building . . . shall be imprisoned for not more than ten years . . . and if death results to any person . . . shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.

18 U.S.C. § 844(i) (1992).  At that time, 18 U.S.C. § 34 provided, "Whoever is convicted of any crime prohibited by this chapter, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life, if the jury shall in its discretion so direct."  18 U.S.C. § 34 (1992).  The Fifth Circuit has held that, under the version of § 844(i) in effect at the time of Samak's sentencing, a district court may sentence a defendant "only to 'any term of years' and not to life imprisonment in the absence of a jury recommendation or jury waiver."[3] *United States v. Williams*, 775 F.2d 1295, 1299 (5th Cir. 1985).

Here, the district court properly dismissed Samak's § 2241 petition for lack of jurisdiction.  Because binding Fifth Circuit precedent at the time of his sentencing actually supported his claim that he should not have been sentenced to life imprisonment, he cannot show that, at the time of his sentencing or any other relevant time, circuit precedent squarely foreclosed his claim.  His

---

[3]    Samak was charged, convicted, and sentenced in the United States District Court for the Eastern District of Louisiana.  Thus, Fifth Circuit law applied at the time of his conviction, sentencing, direct appeal, and § 2255 proceeding.

7

ineffective-assistance claim related to counsel's advice as to a guilty plea likewise fails because no circuit precedent foreclosed his raising that claim in a § 2255 motion.

**AFFIRMED.**[4]

---

[4]    Samak's Motion for Leave to File Reply Brief Out of Time is GRANTED.

PRYOR, Circuit Judge, concurring:

I concur in the decision to affirm the dismissal of the petition for habeas corpus, 28 U.S.C. § 2241, and I agree that our prior panel precedent in *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253 (11th Cir. 2013), governs our analysis of this appeal. *See United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993) ("[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court."). But I write separately to explain why the rule contrived in *Bryant* is indefensible as a matter of textual interpretation. By an evenly divided vote, our Court has refused to reconsider that atextual rule. *Bryant v. Warden, FCC Coleman-Medium*, No. 12-11212 (11th Cir. May 5, 2014) (order denying rehearing en banc) ("A member of this Court in active service having requested a poll on whether these cases should be reheard by the Court siting en banc, and a majority of the judges in active service on this Court not having voted for granting a rehearing en banc, IT IS SO ORDERED that the Suggestion of Rehearing En Banc is DENIED."). If we were to adhere to the plain text of the savings clause, 28 U.S.C. § 2255(e), our task in this and other appeals—and the task of the district courts in our Circuit—would be far easier. Because it is clear from the face of his petition for a writ of habeas

9

corpus that Samak is not attacking the execution of his sentence, his petition should be denied under the plain text of the savings clause.

## INTRODUCTION

For fifteen years we have erroneously interpreted the savings clause to mean that a prisoner may file a petition for a writ of habeas corpus, evade the bar on second or successive motions, and circumvent the one-year statute of limitations if a decision of the Supreme Court "busts" circuit precedent that previously foreclosed the prisoner's claim. *See Bryant*, 738 F.3d at 1274; *Williams v. Warden, Fed. Bureau of Prisons*, 713 F.3d 1332 (11th Cir. 2013); *Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) (en banc); *Wofford v. Scott*, 177 F.3d 1236 (11th Cir. 1999). But whether the law of our Circuit—or in this appeal the law of another circuit—was once adverse to a prisoner has nothing to do with whether his motion to vacate his sentence is "inadequate or ineffective to test the legality of his detention." A motion to vacate under section 2255 allows a federal prisoner to challenge the legality of his *sentence*, but a petition for a writ of habeas corpus under section 2241 allows that prisoner to challenge the legality of his *detention* in ways that section 2255 cannot remedy. Only then is the motion to vacate "inadequate or ineffective."

Beginning with *Wofford*, we have fumbled the meaning of twenty simple words at the end of the following provision:

10

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

28 U.S.C. § 2255(e) (emphasis added). When we first endeavored to interpret that text, we went straight to the legislative history of the clause to divine its meaning, but unsurprisingly could find no clues. *Wofford*, 177 F.3d at 1241, 1241–42 n.2. *But see United States v. Pub. Util. Comm'n of Cal.*, 345 U.S. 295, 319–21, 73 S. Ct. 706, 719–20 (1953) (Jackson, J., concurring) ("I should concur in this result more readily if the Court could reach it by analysis of the statute instead of by psychoanalysis of Congress. . . . Legislative history here as usual is more vague than the statute we are called upon to interpret."). We later stated that "the statute says precious little about what it means . . . to have been 'inadequate' or 'ineffective,'" *Williams*, 713 F.3d at 1341, even though that problem of statutory interpretation is common. To be sure, there are no definitions in the Antiterrorism and Effective Death Penalty Act, but think of the multitude of statutes we must interpret each day that leave us to our own wits to understand their meaning.

Our precedents have failed to consider the ordinary meaning of the text of the savings clause. We have not even tried to interpret the ordinary meaning of its key terms, such as "inadequate," "ineffective," "test," and "detention." In *Wofford*,

11

we instead adopted, for the sake of argument, the approach of the Seventh Circuit because it was purportedly "better reasoned than those of the other circuits, and its rule ha[d] the advantage of being specific." 177 F.3d at 1244. There are many descriptors for our interpretation of the savings clause—overly complex, divorced from the text, wrong—but "better reasoned" and "specific" are not two of them.

Our flawed interpretation reached its pinnacle late last year when a federal prisoner named Dudley Bryant returned to our Court. Bryant had previously filed two motions to vacate his sentence and an application to file a third, but then petitioned for a writ of habeas corpus, 28 U.S.C. 2241, on the ground that he had been erroneously classified as a violent felon under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Before Bryant's appeal, our interpretation of the savings clause explained only why a prisoner's claim failed under the savings clause and, as a result, was dicta. *See Gilbert*, 640 F.3d at 1307, 1319.

To decide Bryant's claim, a panel of our Court distilled from our dicta in *Wofford*, *Gilbert*, and *Williams* the following five-step test:

> Bryant must establish that (1) throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit's binding precedent had specifically addressed Bryant's distinct prior state conviction that triggered § 924(e) and had squarely foreclosed Bryant's § 924(e) claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a); (2) subsequent to his first § 2255 proceeding, the Supreme Court's decision in *Begay* [*v. United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008)], as extended by this Court to Bryant's distinct prior conviction, overturned our Circuit precedent that had squarely foreclosed Bryant's § 924(e) claim; (3) the new rule

12

announced in *Begay* applies retroactively on collateral review; (4) as a result of *Begay*'s new rule being retroactive, Bryant's current sentence exceeds the 10-year statutory maximum authorized by Congress in § 924(a); and (5) the savings clause in § 2255(e) reaches his pure § 924(e)-*Begay* error claim of illegal detention above the statutory maximum penalty in § 924(a).

*Bryant*, 738 F.3d at 1274. And for the first time, our Court granted relief to a federal prisoner, thereby rendering this five-step, atextual, Rube Goldbergian rule the law of our Circuit.

In *Bryant*, we failed in our task as a Court to interpret the text of the savings clause that Congress wrote in 1948 and to make sense of that text so as not to circumvent provisions of the Antiterrorism and Effective Death Penalty Act that Congress later adopted in 1996. *See Anderson v. Wilson*, 289 U.S. 20, 27, 53 S. Ct. 417, 420 (1933) ("We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it."); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 348 (2012) ("[A]lthough properly informed human minds may agree on what a text means, human hearts often disagree on what is right. That is why we vote . . . on what the law ought to be, but leave it to experts of interpretation called judges to decide what an enacted law means."). We not only abandoned the text of the clause itself, but we also adopted a rule at war with the provisions of the statute that limit a movant's ability to file a second or successive motion, 28 U.S.C. § 2255(h), and that limit the

13

statute of limitations to one year, *id.* § 2255(f). Moreover, that rule undercuts the interest in finality that pervades the Act.

The text of the savings clause creates a rule that is both easy to understand and easy to apply. When read in harmony with the other provisions of the Act, the savings clause allows a federal prisoner to file a petition for a writ of habeas corpus only when he attacks the execution of his sentence or when his sentencing court no longer exists. For example, a prisoner who challenges the deprivation of good-time credits or parole determinations may file a petition for a writ of habeas corpus because a motion to vacate his sentence is "inadequate or ineffective" to test that aspect of his detention. *See, e.g.*, *Hajduk v. United States*, 764 F.2d 795, 796 (11th Cir. 1985). Or, for example, a military prisoner whose sentencing court no longer exists must have a forum for his one opportunity to challenge the legality of his sentence. *See Prost v. Anderson*, 636 F.3d 578, 588 (10th Cir. 2011). But only in those kinds of limited circumstances is section 2255 "inadequate or ineffective to test the legality of his detention." *Id.* § 2255(e).

## DISCUSSION

In 1948, Congress created a new mechanism for a federal prisoner to challenge the legality of his sentence. Instead of filing a petition for a writ of habeas corpus, 28 U.S.C. § 2241, "[a] prisoner in custody under sentence of a court . . . may move the court which imposed the sentence to vacate, set aside or correct

14

the sentence." *Id.* § 2255(a). That prisoner may contest his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Id.*

One year later, Congress explicitly limited the ability of a federal prisoner to file a petition for a writ of habeas corpus. Congress instead provided that a federal prisoner must use the new mechanism provided in section 2255, that is, moving to vacate his sentence in the court that sentenced him:

> An application for writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section *shall not be entertained* if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief . . . .

*Id.* § 2255(e); *see also United States v. Hayman*, 342 U.S. 205, 220–21, 72 S. Ct. 263, 273 (1952) ("The very purpose of Section 2255 is to hold any required hearing in the sentencing court because of the inconvenience of transporting court officials and other necessary witnesses to the district of confinement."); *Thomas v. Crosby*, 371 F.3d 782, 806 (11th Cir. 2004) (Tjoflat, J., specially concurring) (discussing this "exclusivity provision" for federal prisoners, which "prevent[s] convicted federal prisoners from seeking relief under § 2241").

15

Congress left open the following exception for a convicted federal prisoner

to file a petition for a writ of habeas corpus in the district of his confinement:

> [U]nless it also appears that the remedy by motion[, 28 U.S.C.
> § 2255,] is inadequate or ineffective to test the legality of his
> detention.

28 U.S.C. § 2255(e). That exception—the "savings clause"—recognizes that a

motion to vacate a sentence may sometimes be inappropriate, that is, "inadequate

or ineffective," so in that circumstance Congress allows a federal prisoner to "test

the legality of his detention" in the traditional action against his custodian. We

have attempted to interpret this exception, but have failed mightily.

In *Bryant*, we held that a motion to vacate a sentence is "inadequate or

ineffective" when our precedent is at odds with a prisoner's claim and the Supreme

Court later corrects that precedent, but this rule fails to consider the ordinary

meaning of the text of the savings clause and the text of the Antiterrorism and

Effective Death Penalty Act in at least four ways. First, Congress created this

alternative mechanism for a federal prisoner to challenge his "*sentence*," *id.*

§ 2255(a) (emphasis added), but Congress left open the opportunity for a federal

prisoner to file a petition for a writ of habeas corpus to challenge his "*detention*,"

*id.* § 2255(e) (emphasis added). Second, Congress stated that a prisoner unable "*to*

*test*" his claim of illegal detention may file a petition for a writ of habeas corpus,

*id.* (emphasis added), not that a prisoner unlikely *to win* his claim about an illegal

16

sentence may file a petition for a writ of habeas corpus. Third, Congress stated that the section 2255 "remedy" must be "inadequate or ineffective" before a prisoner can file a petition for a writ of habeas corpus, not that a court merely denied a prisoner's motion because of the law of our Circuit. Fourth, Congress barred federal prisoners from filing second or successive motions for new rules of *statutory* law, *id*. § 2255(h)(2), and limited the time federal prisoners had to file a motion to vacate their sentence based on "new rights," *id.* § 2255(f)(3).

In the discussion that follows, I address each of these four textual arguments, which together point to a wholly different way of thinking about the savings clause. I then explain why that interpretation is necessary to save the constitutionality of section 2255. I conclude by acknowledging that we are not the only court to have misinterpreted the clause.

*A. Congress Distinguished between Challenging the Legality of a "Sentence" in a Motion to Vacate and "Test[ing] the Legality of . . . Detention" in a Petition for a Writ of Habeas Corpus.*

When Congress enacted section 2255, it created a mechanism for a prisoner to challenge his "*sentence*" in the court that sentenced him, but Congress left open the opportunity for a prisoner to file a petition for a writ of habeas corpus in the district of his confinement "to test the legality of his *detention*":

(a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose

17

such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the *sentence*.

. . .

(e) An application for a writ of habeas corpus . . . shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his *detention*.

28 U.S.C. § 2255 (emphasis added).

A federal prisoner who challenges his *sentence* may challenge only the validity of the proceedings that resulted in his sentence, but a prisoner who challenges his *detention* under the savings clause may challenge the execution of his sentence. *Cf. Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 n.1 (11th Cir. 2008) ("It is well-settled that a § 2255 motion to vacate is a separate and distinct remedy from habeas corpus proper. . . . A prisoner in custody pursuant to a federal court judgment may proceed under § 2241 only when he raises claims outside the scope of § 2255(a), that is, claims concerning the execution of his sentence."). When Congress uses one word in a subsection of a statute, but uses an alternative word in another, we should give those different words different meanings. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 859 (11th Cir. 2000) ("[W]hen Congress uses different language in similar sections, it intends different meanings."); *see also* Scalia & Garner, *supra*, at 170 ("If it says *land* in one place and *real estate* later, the second provision presumably includes

18

improvements as well as raw land."). Here, we should presume that Congress conceived of two different kinds of challenges when Congress used "sentence" in one part of the statute and "detention" in another.

The "detention" of a prisoner encompasses much more than a criminal "sentence." When Congress enacted section 2255, the word "detention" meant "[k]eeping in custody or confinement," 3 *Oxford English Dictionary* 266 (1st ed. 1933), or "[t]he act of keeping back or withholding, either accidentally or by design, a person or thing," *Black's Law Dictionary* 569 (3d ed. 1933). For example, a pretrial detainee could challenge his detention because he is in "custody or confinement" even though he has not been tried. Or a federal prisoner could challenge his detention by raising claims about his good-time credits or the revocation of his parole, which involve the "act of keeping back or withholding" the prisoner by the Executive branch.

This ordinary meaning of the term "detention" also comports with the separation of labor that Congress created between the court that sentenced a prisoner and the court in the district of his confinement. In 1942, the Judicial Conference of the United States tasked a committee of federal judges to study collateral attacks of sentences in federal courts, and the committee recommended that a federal prisoner challenge the validity of his sentence in the district that sentenced him instead of in the district in which he was confined. *Hayman*, 342

19

U.S. at 214–15, 72 S. Ct. at 270. Congress adopted that proposal in 1948. 28 U.S.C. § 2255. This new mechanism to challenge the validity of a sentence alleviated the burden on overwhelmed courts located in districts with federal prisons and the burden on witnesses to the habeas corpus proceeding who would have to travel from the district where the prisoner was tried to the district where the prisoner was detained. *Id.* at 217 n.25, 72 S. Ct. at 271 n.25; *see also id.* at 219, 72 S. Ct. at 272 ("[T]he sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum."); *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 497, 93 S. Ct. 1123, 1131 (1973) ("In enacting [section 2255], Congress explicitly recognized the substantial advantages of having these cases resolved in the court which originally imposed the confinement or in the court located nearest the site of the underlying controversy."). When Congress passed section 2255, it did not impinge "prisoners' rights of collateral attack upon their convictions"; it provided only a new venue for that kind of collateral attack. *Hayman*, 342 U.S. at 219, 72 S. Ct. at 272.

This division of labor Congress crafted when it passed section 2255 also comports with the nature of sentencing and confinement in 1948. Congress passed section 2255 in an era where the length of "detention" was governed by parole determinations and good-time credits. *See Mistretta v. United States*, 488 U.S. 361,

363–67, 109 S. Ct. 647, 650–52 (1989). In this era of indeterminate sentencing, many prisoners reliant on the Parole Commission and good-time credits would have "detention" claims separate from claims about the legality of their conviction and sentence. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 186–87, 99 S. Ct. 2235, 2241 (1979).

In the light of this history, it is inconceivable that the savings clause is reserved for those prisoners who want a second bite at the apple to challenge the legality of their sentences by petitioning for a writ of habeas corpus in the districts that confine them after they already challenged the legality of their sentences in the courts that sentenced them. What an odd result that yields in this appeal: Even after the District Court of the Eastern District of Louisiana dismissed his first motion to vacate his sentence, *Samak v. United States*, No. CRIM A. 91-189, 2000 WL 557331, at *5 (E.D. La. May 4, 2000), and the Fifth Circuit denied him a certificate of appealability, Samak attempts to evade those denials and hopes for a different result by challenging his sentence again in our Court under our multi-prong *Bryant* rigmarole. Even stranger, our Court must now review the law of the Fifth Circuit to determine whether any decision of the Supreme Court has "busted" precedents of that circuit court. *See* Majority Op. at 7 n.3.

Prisoners not only sue in the wrong court when they attack the legality of their sentences in the district of their confinement, but they also sue the wrong

defendant. Our faulty interpretation of the savings clause places wardens in the precarious position of defending against the resentencing of a prisoner, instead of the United States Attorney who participated in the prisoner's original sentencing. A prisoner who files a motion to vacate his sentence serves that motion upon the United States Attorney. 28 U.S.C. § 2255(b). But when a prisoner like Samak petitions for a writ of habeas corpus, he must allege "the name of the person who has custody over him," that is, the warden. *Id.* § 2242. Here, the remedy requested by Samak—resentencing—is not the kind of remedy we would expect a warden to oversee.

Judge Martin's partial dissent in *Bryant* highlights this problem about the proper defendant and venue. Judge Martin urged the panel to grant the writ by directing the warden to release Bryant immediately. *Bryant*, 738 F.3d at 1293 (Martin, J., concurring in part and dissenting in part). As she explained, releasing a successful habeas petitioner from custody is the sort of remedy a warden has historically carried out since the inception of the Writ, which roughly translates to "bring the body." *Id.* at 1295–96. Of course, courts may now dispose of a habeas petition "as law and justice require," 28 U.S.C. § 2243, but our interpretation of the savings clause defies logic. Prisoners like Bryant or Samak have already sued the United States; they cannot now substitute a new defendant, who played no role in their sentencing years ago, for a second try.

22

Congress divided collateral attacks between the sentencing court and the court in the district of confinement. A prisoner files a motion to vacate his sentence, which challenges the validity of a sentence, in the court that sentenced him, but he files his petition for a writ of habeas corpus, which challenges the execution of his sentence, in the court that confines him. *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S. Ct. 1827, 1835 (1973) (stating that prisoners' suits challenging good-time credits "fell squarely within th[e] traditional scope of habeas corpus"); *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (ruling that a prisoner may file a petition for a writ of habeas corpus challenging administrative sanctions imposed on him for possession of narcotics); *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) ("[A] § 2241 action challenging prison disciplinary proceedings, such as the deprivation of good-time credits, is not challenging prison *conditions*, it is challenging an action affecting the fact or duration of the petitioner's custody."); *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992) ("The government correctly points out that Cleto's claim should have been filed as a petition for writ of habeas corpus under 28 U.S.C. § 2241, as he challenges the execution of his sentence rather than the validity of his conviction and sentence."); *Tucker v. Carlson*, 925 F.2d 330, 331 (9th Cir. 1991) (stating that a challenge of the execution of a prisoner's sentence is "maintainable only in a petition for a writ of habeas corpus filed pursuant to 28

23

U.S.C. § 2241"); *United States v. Hutchings*, 835 F.2d 185, 186 (8th Cir. 1987) ("Such an attack on the execution of the sentence is not properly cognizable in a § 2255 motion."); *Hajduk*, 764 F.2d at 796 (challenging a change to parole determinations).

Collateral review for federal prisoners, in this way, is fundamentally different from petitions for writs of habeas corpus for state prisoners. A state prisoner may seek relief by filing a petition "on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). Some courts understand this language to require a state prisoner to challenge the execution of their sentences, including the deprivation of good-time credits or parole, in a petition under section 2254 instead of a petition under section 2241. *See, e.g.*, *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). For example, the Second Circuit explained that a state prisoner challenging the decision of a parole board must file a petition under section 2254, not a petition under section 2241, because the decision of the parole board affected his "custody." *Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003). In *Cook*, the prisoner argued that section 2254 was inapplicable to his claim because he challenged his "custody" based on a decision of the parole board and not a state court. *Id.* But the Second Circuit rejected this argument and used the differences between section 2254 and section 2255 to explain its decision. *Id.* The Second

24

Circuit emphasized that "section 2255, which is the vehicle by which persons in federal custody may assert that their *sentence* violates the federal Constitution or federal law, is critically narrower than section 2254, by which persons in state custody may challenge that *custody*." *Id.* (emphasis added). Unlike a federal prisoner who moves to vacate his sentence under section 2255, a state prisoner may bring a petition under section 2254 to challenge his "custody," which is "broader than a claim that the imposition of one's sentence is illegal." *Id.* (quoting *James v. Walsh*, 308 F.3d 162, 167 (2d Cir. 2002)). The court concluded that the state prisoner was unlike a federal prisoner, who must resort to a petition under section 2241 to challenge the execution of his sentence. *Id.* Similarly, the Seventh Circuit contrasted the use of "sentence" in section 2255 with the use of "custody" in section 2254 to explain that a state prisoner must take a "different path" than a federal prisoner to challenge prison disciplinary proceedings. *Walker v. O'Brien*, 216 F.3d 626, 632–33 (7th Cir. 2000). The Seventh Circuit ruled that a state prisoner must challenge those disciplinary proceedings in a petition under section 2254 instead of a petition under section 2241 because, unlike section 2255 for federal prisoners, the "focus" of section 2254 is "on the fact of custody, not necessarily on the flaws in the underlying judgment or sentence that brought the person there." *Id.* at 633. Similarly, our Circuit requires state prisoners who challenge the execution of their sentences to comply with the procedural

25

requirements of section 2254. *See, e.g.*, *Thomas v. Crosby*, 371 F.3d 782, 787 (11th Cir. 2004); *Medberry v. Crosby*, 351 F.3d 1049, 1058–62 (11th Cir. 2003). Unlike these state prisoners who challenge their "custody," a motion under section 2255 is the exclusive mechanism for a federal prisoner to challenge his "sentence," *see Thomas*, 371 F.3d at 806 (Tjoflat, J., specially concurring), while remaining challenges to his "detention" are cognizable in a petition for a writ of habeas corpus.

### B. "To Test" Is Not Synonymous with "To Win."

A prisoner may file a petition for a writ of habeas corpus if he cannot adequately or effectively *test* the legality of his detention, and "*to test* the legality of his detention" means only to have the opportunity to raise an argument about the legality of his detention. The definition of "to test" is "to try," 11 *Oxford English Dictionary* 220 (1st ed. 1933), or "to ascertain the truth or the quality or fitness of a thing," *Black's Law Dictionary*, *supra*, at 1720. In the light of these definitions, whether a prisoner may "test" a claim about the legality of his detention is not coterminous with whether he wins or loses that claim; whether a prisoner may "test" his claim requires us to ask only whether the prisoner has the opportunity to raise that claim for our examination. *See Prost v. Anderson*, 636 F.3d 578, 584 (10th Cir. 2011) ("[T]he clause is concerned with process—ensuring the petitioner

26

an *opportunity* to bring his argument—not with substance—guaranteeing nothing about what the *opportunity* promised will ultimately yield in terms of relief.").

A prisoner cannot adequately or effectively test the legality of his detention if his claim is not cognizable in a motion to vacate his sentence. If the claim is not cognizable, then a prisoner cannot "test" it and obtain a "remedy" as the clause requires. For example, a prisoner cannot "test" a claim about the revocation of his parole in a motion to vacate his sentence. That claim and other claims related to the execution of a prisoner's sentence do not contend that the sentence "was imposed in violation of the Constitution or laws of the United States" or that "the court was without jurisdiction to impose such sentence," 28 U.S.C. § 2255(a). The prisoner must instead raise claims about the execution of his sentence in a petition for a writ habeas corpus. *See, e.g.*, *Hajduk*, 764 F.2d at 796 (dismissing a motion to vacate a prisoner's sentence and instead requiring that the prisoner file a petition for a writ of habeas corpus). Or, as a rare example highlighted by the Tenth Circuit in *Prost*, a military prisoner cannot challenge the legality of his sentence in the court that sentenced him because his "sentencing court literally dissolves after sentencing and is no longer available to test a prisoner's collateral attack." *Prost*, 636 F.3d at 588 (citing *Ackerman v. Novak*, 483 F.3d 647, 649 (10th Cir. 2007)).

In *Bryant*, we conflated the words "to test" with the words "to win" or "likely to win." We decided that, if settled circuit precedent goes against a

movant's claim, then that circuit precedent deprived that movant of "a reasonable opportunity to obtain a reliable judicial determination" of his claim. *Bryant*, 738 F.3d at 1263; *see also Wofford*, 177 F.3d at 1244 (citing *Davenport*, 147 F.3d at 610–11). But neither our Circuit rules nor section 2255 prohibit a prisoner from raising an argument that is foreclosed by circuit precedent. So long as the prisoner's argument attacks the legality of his sentence, he can raise it. For example, had Bryant "test[ed]" his conviction by arguing that his prior felony for carrying a concealed firearm was not a "violent felony," 18 U.S.C. § 924(e), then *Begay v. United States* might have been *Bryant v. United States* instead. Any prisoner has an opportunity to raise arguments in his direct appeal or his initial motion to vacate his sentence just as Larry Begay or Roland Bailey did, *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581; *Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501 (1995), and we may adopt those arguments en banc or the Supreme Court may adopt those arguments as the law of the United States. A prisoner may always "test" or "try" his claim in our Court so that we may "ascertain . . . the quality" of his argument, even if circuit precedent does not support it.

28

*C. The Section 2255 Remedy Is "Inadequate or Ineffective" When a Prisoner Contests Something Other Than the Legality of His Sentence, Not When Circuit Precedent Is Merely Adverse to His Claim that Challenges the Legality of His Sentence.*

For the savings clause, we have surmised that two conditions must be present to render section 2255 "inadequate or ineffective" to test a claim. First, erroneous circuit precedent "foreclosed" a prisoner's argument during sentencing, direct appeal, and first collateral proceeding. *Bryant*, 738 F.3d at 1274. Second, a Supreme Court decision later "busted" that circuit precedent. *Id.* at 1275–76. But this approach contravenes the legal meaning of "inadequate or ineffective."

The words "inadequate" and "ineffective" have ordinary legal meanings, and we cannot abandon the meanings of these words because we think a prisoner's claim ought to be cognizable in a petition for a writ of habeas corpus. For example, we do not call a lawyer's work "ineffective" because his client lost. *See Brown v. Caraway*, 719 F.3d 583, 597 (7th Cir. 2013) (Easterbrook, J., concerning the circulation under Circuit Rule 40(e)) ("A lawyer's work satisfies the 'ineffective assistance' doctrine if counsel presents the best available defense, even if that defense is doomed."). Instead, counsel is "ineffective" only when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); *see, e.g.*, *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1410 (2012); *Cullen v. Pinnholster*, ___

29

U.S. ___, 131 S. Ct. 1388, 1406–07 (2011); *Wiggins v. Smith*, 539 U.S. 510, 524–25, 123 S. Ct. 2527, 2536–37 (2003). Likewise, we do not call a remedy at law "inadequate" solely because a defendant is unlikely to win an award of money damages. *Cf. Black's Law Dictionary*, *supra*, at 940. Instead, a remedy at law is "adequate" when a plaintiff's claim is cognizable in a court of law and redressable with a legal remedy, regardless of the plaintiff's chances of success. *Bolin v. Story*, 225 F.3d 1234, 1242–43 (11th Cir. 2000); *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999); *United Steelworkers of Am. v. USX Corp.*, 966 F.2d 1394, 1404–05 (11th Cir. 1992); *Hobson v. Fischbeck*, 758 F.2d 579, 581 (11th Cir. 1985). Similarly, writs of mandamus are unavailable "where there is another means to obtain *adequate* review," *In re Bethesda Mem'l Hosp., Inc.*, 123 F.3d 1407, 1408 (11th Cir. 1997) (emphasis added), but the adequacy of an appeal, in lieu of a petition for a writ of mandamus, does not depend on whether the petitioner is likely to win his appeal. Instead, we ask only whether his claim is addressable in an appeal. *See, e.g.*, *In re Smith*, 926 F.2d 1027, 1030 (11th Cir. 1991) (ruling that mandamus was the only appropriate remedy because "[t]he trial judge has effectively frozen the litigation and thwarted the possibility of an appealable final order"); *see also Ex parte Fahey*, 332 U.S. 258, 260, 67 S. Ct. 1558, 1559 (1947) (stating that the "extraordinary remed[y]" of mandamus "should be resorted to only where appeal is a clearly *inadequate* remedy" (emphasis

added)). This understanding of adequacy "ensure[s] that the writ will not be used as a substitute for the regular appeals process." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81, 124 S. Ct. 2576, 2587 (2004). A remedy at law or an appeal in lieu of a petition for a writ of mandamus are "inadequate" only if they are "unfit[] or not adapted to the end in view." *Black's Law Dictionary*, *supra*, at 940.

That a prisoner's claim is unlikely to succeed on the merits because of the time and place a prisoner raised it does not render section 2255 "inadequate or ineffective." In *Bousley v. United States*, 523 U.S. 614, 617–18, 118 S. Ct. 1604, 1608 (1998), for example, a prisoner collaterally attacked his sentence on the ground that he was innocent of "using" a firearm after the Supreme Court defined "use" in *Bailey v. United States*, 516 U.S. 137, 144, 116 S. Ct. 501, 506 (1995). Bousley had procedurally defaulted his claim, but he argued that he could establish cause to justify his procedural default because, "before *Bailey*, any attempt to attack his guilty plea would have been futile." *Bousley*, 523 U.S. at 621, 623, 118 S. Ct. at 1610, 1611 (internal quotation marks and alteration omitted). The Supreme Court rejected Bousley's argument and ruled that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35, 102 S. Ct. 1558, 1573 n.35) (internal quotation marks omitted). Likewise, a federal prisoner cannot argue that a motion to vacate his sentence was "inadequate or

31

ineffective" merely because his claim was "unacceptable to that particular court at that particular time." *Id.*

Our understanding of the terms "inadequate or ineffective" has been doomed from the start. We adopted our understanding of "adequacy" based on the rationale of the Seventh Circuit in *Davenport*, 147 F. 3d 605, 609 (7th Cir. 1998) (Posner, C.J.). The Seventh Circuit did not give adequacy its plain meaning, but instead declared that adequacy "*should mean*" that "a prisoner [has] a reasonable opportunity to *obtain a reliable judicial determination* of the *fundamental legality of his conviction and sentence*." *Id.* (emphasis added). That pragmatic approach is wholly unsuited for the task before us—the interpretation of text enacted by Congress. Moreover, the rule adopted by the Seventh Circuit—that a prisoner must have a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence—is not what the savings clause says. The clause asks whether the "remedy by motion is inadequate or ineffective *to test* the *legality of his detention*." 28 U.S.C. § 2255(e) (emphasis added). The Seventh Circuit's overly broad understanding of "adequacy" reads out the other words in the provision—namely, "to test" and "detention." A "reliable judicial determination" is not the same as "test[ing]" a claim. The former is concerned with substance, and the latter is concerned with procedure. And testing

32

the "legality of a conviction and sentence" is not the same as testing the "legality of his detention."

Contrary to this flawed approach inspired by the Seventh Circuit, a prisoner who files a motion under section 2255, has both an adequate and effective forum to litigate the legality of his conviction and sentence, but the remedy under section 2255 might not be adequate or effective to resolve some claims about his detention.  When a prisoner challenges the execution of his sentence, vacating that sentence entirely is "not adapted to the end in view," *Black's Law Dictionary*, *supra*, at 940, or is "[o]f such a nature as not to produce . . . the intended[] effect," 5 *Oxford English Dictionary* 239 (1st ed. 1933) (defining "ineffective"). For example, if a prisoner challenges a parole determination or the deprivation of good-time credits, he challenges the actions of executive officials and not the actions of the court that sentenced him. A motion to vacate his sentence, therefore, is inadequate to address those actions by parole or prison officials. *Compare Addonizio*, 442 U.S. at 186, 99 S. Ct. at 2241 (rejecting section 2255 motion challenging changes to parole), *with Preiser*, 411 U.S. at 487, 492 n.10, 93 S. Ct. at 1835, 1838 n.10 (stating that a section 2241 petition that "alleged that the deprivation of [prisoners'] good-conduct-time credits was causing or would cause [the prisoners] to be in illegal physical confinement" was "squarely within the traditional scope of habeas corpus"). Moreover, a motion filed in the sentencing

33

court is "ineffective" to test the legality of a prisoner's detention when he challenges events that occurred after his sentencing because the motion to vacate his sentence concerns only whether that sentence was illegal or whether the court was without jurisdiction. *See* 28 U.S.C. § 2255(a). For the same reasons that Congress decided that challenges about the legality of the prisoner's sentence ought to be heard in the court that sentenced him, a challenge about the prisoner's confinement ought to be heard in the district of confinement where the witnesses to the allegedly illegal action are located. *See Hayman*, 342 U.S. at 217 n.25, 72 S. Ct. at 271 n.25; *Hajduk*, 764 F.2d at 796 ("A challenge to the lawfulness of the parole commissions actions cannot be brought pursuant to 28 U.S.C. § 2255. Hajduk's *ex post facto* argument is nothing more than a challenge to the lawfulness of the parole commission's actions, not the lawfulness of the sentence imposed by the court. Such an action must be brought as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241." (internal citation omitted)).

*D. Our Interpretation of the Savings Clause Is at War with the Other Provisions of Section 2255, But an Interpretation Focused on "Test[ing] the Legality of . . . Detention" Avoids that Problem.*

When we have interpreted the savings clause, we have professed to take into account the other provisions of the Act, but that was an empty promise. The effect of our interpretation has been the very opposite—we have armed prisoners with a

way to circumvent the bar on second or successive motions, 28 U.S.C. § 2255(h), and the statute of limitations, *id.* § 2255(f).

In *Williams*, we defended our interpretation of the savings clause as purportedly respecting other provisions of section 2255 while not making the savings clause meaningless:

> [T]he savings clause cannot simply mean that every § 2255 motion that appears to have been incorrectly decided based on subsequent Supreme Court precedent may be revisited through a § 2241 habeas petition; if it did, then the bar on second or successive motions would effectively be written out of the statute, and the savings clause would swallow up the specific allowance for a second motion when the basis of the challenge is "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *See* 28 U.S.C. § 2255(h)(2). Yet by the same token, the circumstances delineated in § 2255(h)(1) and (2) cannot be the only instances in which the § 2255 remedy is inadequate; if that were true, then it would be the savings clause that was rendered meaningless.

713 F.3d at 1342–43.

Contrary to *Williams*, the savings clause is not an end-run around the bar on second or successive petitions or the statute of limitations of the Antiterrorism and Effective Death Penalty Act. Each of those limitations has a fixed set of exceptions. The savings clause is not an additional, unenumerated exception. Instead, the purpose of the savings clause both predates and postdates the bar on second or successive motions and the statute of limitations. A prisoner who properly invokes the savings clause need not worry about those bars because that

35

prisoner challenges the execution of his sentence—distinct from challenges about the proceedings that resulted in his conviction and sentence. Under that interpretation, the savings clause is far from "meaningless," and the limitations imposed by the Antiterrorism and Effective Death Penalty Act remain intact.

### 1. Evading the Bar on Second or Successive Petitions Some of the Time Is As Much an Affront to Congress As Evading It All of the Time.

We have previously attempted to limit the savings clause by ruling that it is not broad enough to catch "every § 2255 motion that appears to have been incorrectly decided based on subsequent Supreme Court precedent," lest "the savings clause . . . swallow up the specific allowance for a second motion" for new rules of constitutional law made retroactive by the Supreme Court. *Williams*, 713 F.3d at 1342–43. In *Williams*, for example, we limited the savings clause by explaining that *Begay* was not "circuit law-busting in *Wofford*'s sense of the term" for Williams because we had never held that his exact prior felony, Fla. Stat. § 810.02, was a violent felony before *Begay*. *Id.* In other words, Williams's remedy in the court that sentenced him was "adequate" because the law of our Circuit was not against him, and he was free to argue that he was erroneously sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e), in his first motion to vacate.

This circuit law-busting approach is a charade. We decide thousands of criminal and habeas appeals per year. And under our approach, whether a prisoner like Williams wins or loses his petition for a writ of habeas corpus rests on his teeny-tiny hope that, once before in one of those other prisoners' appeals, we declared some state-law crime a "violent felony" under the Armed Career Criminal Act. Likewise, whether Samak wins or loses in this Court depends on whether some other court's precedent directly foreclosed his argument at the time of his sentencing in Louisiana, when he directly appealed to the Fifth Circuit, and when he first filed his motion to vacate his sentence in Louisiana.

Even if we so heroically disallow prisoners like Williams and Samak to circumvent the bar on second or successive petitions, our interpretation of the savings clause *still* circumvents the bar on second or successive petitions for the remaining successful prisoners like Bryant. Our interpretation is not any less bad because we ignore the clear statutory ban on second or successive motions that raise non-constitutional issues for Bryant, but heed that ban for Wofford, Gilbert, Williams, and now Samak. We must instead, at all times, adhere to the clear directive of federal law that federal prisoners may file a second or successive motion challenging the legality of their sentences based on only two changed circumstances:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish

37

> by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

Our interpretation of the savings clause circumvents that directive in three ways. First, we allow a prisoner to seek relief even though he has no "newly discovered evidence" that he is innocent of his "offense." Second, we allow a prisoner to seek relief based on a new rule interpreting a *statute*, not the Constitution, even if he previously filed a motion to vacate his sentence. Third, we allow prisoners to seek relief based on that new rule even if the Supreme Court did not make it retroactive.

The successful petition for a writ of habeas corpus in *Bryant* is paradigmatic. In 2008, the Supreme Court crafted a rule about what constitutes a "violent felony" under the Armed Career Criminal Act. *See Begay*, 533 U.S. at 144–45, 128 S. Ct. at 1586. Bryant then argued that he was legally innocent of his sentence in a motion to vacate his sentence. But we denied Bryant's application to file this third motion because *Begay* was not a new rule of constitutional law. *Bryant*, 738 F.3d at 1260. So then Bryant asked to file a petition for a writ of habeas corpus that raised the same argument—the new rule in *Begay* rendered his enhanced sentence unlawful. *Id.* at 1260—61. And we let him. Next, we gave him relief because *we*

decided, not the Supreme Court, that *Begay* applied retroactively to the Armed Career Criminal Act. *Id.* at 1276–78.

When we grant a prisoner like Bryant relief under the savings clause for an argument that he is legally innocent of his sentence and not actually innocent of his offense, we sidestep the clear command of Congress. To file a second or successive motion based on actual innocence, the prisoner must have "newly discovered evidence" proving that "no reasonable factfinder would have found [him] guilty of the offense." 28 U.S.C. § 2255(h)(1). A decision by the Supreme Court is not "newly discovered evidence." Nor is a prisoner actually innocent of his "offense" if all he can establish is legal innocence of his sentence. *See Williams*, 713 F.3d at 1346 ("[H]e is asserting only *legal* innocence: that his burglary convictions should have been considered violent felonies under the [Armed Career Criminal Act]."); *McKay v. United States*, 657 F.3d 1190, 1199 (11th Cir. 2011) ("McKay does not even suggest, because he cannot, that he did not actually commit the crime of carrying a concealed weapon."); *see also In re Hill*, 715 F.3d 284, 296 (11th Cir. 2013) ("A sentence is not a conviction for an 'underlying offense.'"). Bryant was still guilty of his offense—possessing a firearm as a felon, 18 U.S.C. § 922(g)—and still guilty of his prior drug offenses and carrying a concealed firearm. Because Bryant could not possibly have proved that he was actually innocent of his offense, he was prohibited from filing a second

39

or third motion to vacate his sentence. But under our flawed interpretation of the savings clause, Bryant and others get another try.

Allowing federal prisoners to attack the legality of their convictions and sentences via the savings clause evades the bar on second or successive petitions that governs both state and federal prisoners. For a striking example, we recently denied an application to file a successive habeas petition of a state prisoner sentenced to death because his claim was a "pure sentencing claim." *In re Hill*, 715 F.3d at 296, 301. The prisoner argued that the state could not execute him because new evidence proved that he was mentally handicapped. *Id.* at 289–90. But we denied his application because any claim that he was mentally handicapped was not "newly discovered evidence of actual innocence." *Id.* at 296. That prisoner could not "point[] to any newly discovered facts that establish[ed], or could even possibly establish, his innocence of the underlying offense of murder." *Id*. But our Court this year refused to acknowledge that our hands are similarly tied for federal prisoners like Bryant who allege only that they are legally innocent of their sentences. Instead, our Court has rendered the savings clause a loophole for federal prisoners while state prisoners—even if sentenced to death—get no such relief.

Our interpretation has also gutted the second exception for second or successive motions—new rules of constitutional law. Surely, if Congress intended prisoners to file multiple motions about new rules of *statutory* law, then it would

40

have said so. We cannot add exceptions when Congress already specified that federal prisoners may file a second or successive petition only for new rules of *constitutional* law. It is not our role to "elaborate unprovided-for exceptions to a text." Scalia & Garner, *supra*, at 93 (discussing the omitted-case canon of construction). And "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *TRW Inc. v. Andrews*, 534 U.S. 19, 28, 122 S. Ct. 441, 447 (2001) (internal quotation marks omitted).

Moreover, Congress did not include the requirement that a new rule be made retroactive by the Supreme Court willy nilly. For the identically worded bar on second or successive petitions for state prisoners, 28 U.S.C. § 2244(b)(2)(A), the Supreme Court has made clear that "the Supreme Court is the only entity that can 'make' a new rule retroactive. The new rule becomes retroactive, not by the decisions of the lower court or by the combined action of the Supreme Court and the lower courts, but simply by the action of the Supreme Court." *Tyler v. Cain*, 533 U.S. 656, 663, 121 S. Ct. 2478, 2482 (2001) (alteration omitted); *see In re Anderson*, 396 F.3d 1336, 1339 (11th Cir. 2005) (applying the rule in *Cain* to section 2255 motions). But our interpretation allows federal prisoners to rely on a new rule announced by the Supreme Court even though the Court never once uttered the word "retroactive" in its decision. *See Bryant*, 738 F.3d at 1276–78.

41

Instead of our flawed interpretation of the savings clause—which allows some prisoners to avoid these congressionally erected barriers—imagine an interpretation of the savings clause that avoids circumventing the bar on second or successive motions altogether. The plain meaning of the savings clause reaches different claims than *Bryant* ever conceived. This understanding does not require us to weave through the bar on second or successive motions and its exceptions; it leaves those claims challenging the legality of a prisoner's sentence to the sentencing court and reserves the claims challenging the legality of the prisoner's continued confinement for the court in the district of confinement. Generally, no prisoner is entitled to multiple rounds of collateral review for the purpose of attacking his sentence. Congress carved out only two narrow circumstances in which a prisoner may try again, and we must adhere to those narrow exceptions, not widen them.

### 2. Our Interpretation Circumvents the Statute of Limitations and Undercuts the "Central Concern" of Finality in the Act.

When Congress enacted the Antiterrorism and Effective Death Penalty Act, it imposed a one-year statute of limitations for federal prisoners to attack the validity of their sentences. The statute of limitations may toll until a "right asserted [by the prisoner] was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Our "circuit-busting precedent"

42

rule, of course, flies in the face of that statute of limitations. Take Samak's repeated collateral attacks, for example. Samak filed his first motion to vacate his sentence two and a half years too late. *Samak*, 2000 WL 557331, at *1. But in our Circuit, Samak now has another chance to raise arguments he should have raised more than fifteen years ago.

When we allow a prisoner to challenge his sentence years after the statute of limitations expired, we frustrate the "central concern" of the Act: finality. *Calderon v. Thompson*, 523 U.S. 538, 558, 118 S. Ct. 1489, 1502 (1998). At some point, collateral attacks must cease and a conviction must be final. That finality "is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309, 109 S. Ct. 1060, 1074 (1989). And "[a] procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of underlying substantive commands." *McCleskey v. Zant,* 499 U.S. 467, 492, 111 S. Ct. 1454, 1469 (1991) (quotation marks omitted).

But if we instead interpret the text of the savings clause according to its plain meaning—that it reaches challenges about a prisoner's detention that arise well after the prisoner was sentenced—then we do not undermine the time limits that Congress imposed for challenges about the legality of his sentence. The

43

savings clause is not a do-over in a different forum for challenges to the legality of a prisoner's sentence long after that one-year statute of limitations had expired; instead, the savings clause leaves open petitions for writs of habeas corpus for those prisoners who challenge the execution of their sentences.

### E. The Savings Clause Is Constitutionally Necessary so that Claims about the Execution of a Sentence Do Not Go Unheard.

Some courts have stated that the savings clause is necessary to avoid "a thorny constitutional issue" about the suspension of habeas corpus, *see, e.g.*, *In re Dorsainvil*, 119 F.3d 245, 248 (3d Cir. 1997); *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997), and I agree, but for a wholly different reason. A prisoner who challenges the execution of his sentence must have a forum where he may bring that challenge, even though it arises long after a court sentenced him. The only constitutional problem inherent in the savings clause is when a prisoner seeks to challenge the execution of his sentence, and no court will hear his challenge.

Challenges about good-time credits or parole revocation or other prison disciplinary proceedings affecting a prisoner's confinement are challenges about executive detention. These challenges mirror challenges brought by pretrial detainees, who are the quintessential habeas petitioners because they have been detained by the Executive before courts have determined their guilt. *See* The Federalist No. 84, at 512 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("To bereave a man of life or by violence to confiscate his estate, without accusation or

44

trial, would be so gross and notorious an act of despotism as must at once convey the alarm of tyranny . . . but confinement of the person, by secretly hurrying him to jail . . ., is a less public, a less striking, and therefore a *more dangerous engine* of arbitrary government." (quoting 1 William Blackstone, Commentaries \*136; 4 *id.* at \*438) (internal quotation marks and alterations omitted)); *see also, e.g.*, *Schall v. Martin*, 467 U.S. 253, 104 S. Ct. 2403 (1984); *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861 (1979). These challenges of executive detention were the kinds of challenges that the Framers anticipated when they adopted the Suspension Clause more than 200 years ago. *See Boumediene v. Bush*, 553 U.S. 723, 739–46, 128 S. Ct. 2229, 2244–47 (2008); *Preiser*, 411 U.S. at 484, 93 S. Ct. at 1833 ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody."). The savings clause remedies any constitutional problem posed by section 2255 by allowing a prisoner, whose challenge to his detention is not cognizable in a motion to vacate his sentence, to challenge his detention by petitioning for a writ of habeas corpus in the court that confines him.

Prisoners like Samak do not face that same constitutional pitfall. He could file a petition for an Original Writ from the Supreme Court to attack the legality of his sentence. The Supreme Court, not our Court, is his court of last resort. *See, e.g.*, *Chavez v. Sec'y, Fla. Dep't of Corr.*, No. 14-10486, slip op. at 19 (11th Cir. Feb. 10, 2014) (Martin, J., concurring in the judgment) ("Mr. Chavez, like all capital

45

habeas petitioners, is free to file an original habeas corpus petition in the United States Supreme Court.").

Regardless of the limits that the Act places on the power of our Court, the Act does not strangle the power of the Supreme Court to grant an Original Writ. *Felker v. Turpin*, 518 U.S. 651, 658, 116 S. Ct. 2333 (1996). The Act cannot transgress the constitutional rights of prisoners who allege that they have been erroneously sentenced or unfairly tried when the Supreme Court retains its power to grant an Original Writ. The Supreme Court affirmed this proposition as early as 1868 when it decided *Ex Parte Yerger*, 75 U.S. (8 Wall.) 85, 105 (1868), and as recently as 1996 when it decided *Felker v. Turpin*, 518 U.S. 651, 116 S. Ct. 2333 (1996).

Travel back to 1868 when Congress stripped the Supreme Court of all of its appellate jurisdiction to review decisions of circuit courts denying habeas petitions, Act of Mar. 27, 1868, ch. 34, § 2, 15 Stat. 44, and the Supreme Court rejected the argument that this Act unconstitutionally suspended the writ of habeas corpus. *Ex parte Yerger*, 75 U.S. (8 Wall.) at 105. Before 1868, the Supreme Court had the power to grant an Original Writ, Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 82, and appellate jurisdiction to hear appeals from inferior courts that had decided petitions for habeas corpus, Act of Feb. 5, 1867, ch. 28, 14 Stat. 385. But then Congress took away the latter. Act of Mar. 27, 1868, ch. 34, § 2, 15 Stat. 44. The Supreme

Court decided that, when Congress took away the jurisdiction of the Supreme Court to hear those appeals, it did not also impliedly repeal the Supreme Court's power to issue an Original Writ of habeas corpus. *Ex parte Yerger*, 75 U.S. (8 Wall.) at 105. The Court explained, "It is true that exercise of appellate jurisdiction, under the act of 1789, was less convenient than under the act of 1867, but the provision of a new and more convenient mode of its exercise does not necessarily take away the old. . . . Addition is not substitution." *Id.* The clear import of *Ex Parte Yerger* is that, so long as the Supreme Court retains the power to entertain an Original Writ, Congress does not violate the Suspension Clause.

More than 100 years later, Congress again limited the ability of prisoners to attack their sentences collaterally, and the Supreme Court again rejected an argument that Congress violated the Suspension Clause. *Felker*, 518 U.S. at 664, 116 S. Ct. at 2340. Ellis Felker, a state prisoner, challenged the bar on second or successive petitions as an unconstitutional suspension of the writ of habeas corpus. *Id.* at 658, 116 S. Ct. at 2337. Shortly before his execution, Felker attempted to file a second habeas petition on the ground that he was innocent of the offense because postconviction experts had established that his victim died when Felker was under police surveillance. *Id.* at 657–58, 116 S. Ct. at 2337. Our Court rejected his application to file a second petition, and the Antiterrorism and Effective Death Penalty Act precluded Felker from seeking Supreme Court review of our denial. 28

47

U.S.C. § 2244(b)(3)(E); *Felker*, 518 U.S. at 658, 116 S. Ct. at 2337. The Supreme Court stayed Felker's execution to determine whether the Act constituted an unconstitutional restriction on its appellate jurisdiction and whether it unconstitutionally suspended the writ of habeas corpus. *Id.* The Supreme Court rejected the argument that the Act unconstitutionally infringed on its appellate jurisdiction because it "makes no mention of [the Supreme Court's] authority to hear habeas petitions filed as original matters in this Court." *Id.* at 661, 116 S. Ct. at 2339. The Court also explained that the bar on second or successive petitions was not an invalid suspension of the writ of habeas corpus because "[t]he new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" *Id.* at 664, 116 S. Ct. at 2340.

Any argument that a prisoner like Bryant was unconstitutionally deprived of his right to attack his sentence fails just as Yerger's and Felker's arguments failed. Bryant had many opportunities to test the legality of his sentences. He knowingly pleaded guilty to his offense; he appealed his sentence to our Court; he collaterally attacked his sentence, but failed to comply with the statute of limitations; we reviewed Bryant's application for a certification of appealability, but denied it; he collaterally attacked his sentence again in the district court, but failed to comply with the bar on second or successive motions; we rejected his application to file a

48

third motion attacking his sentence; and finally, he petitioned for a writ of habeas corpus.

At some point, collateral review must end. *See* Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 145 (1970) ("The proverbial man from Mars would surely think we must consider our system of criminal justice terribly bad if we are willing to tolerate such efforts at undoing judgments of conviction."). The law will forever be in a state of flux, and Congress, in a state of legislation. A federal prisoner's sentence cannot always be vulnerable to collateral attack, lest the finality of convictions ceases to exist. As the Supreme Court plainly explained in *Sunal v. Large*, "It is not uncommon after a trial is ended and the time for appeal has passed to discover that a shift in the law or the impact of a new decision has given increased relevance to a point made at the trial but not pursued on appeal." 332 U.S. 174, 182, 67 S. Ct. 1588, 1592 (1947). But "[i]f in such circumstances, habeas corpus could be used to correct the error, the writ would become a delayed motion for a new trial." *Id.* at 182, 67 S. Ct. at 1593. As the Supreme Court prudently concluded, "Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court." *Id.*

49

Once a prisoner has used his one motion to challenge the legality of his sentence, Congress has given him only limited options to continue to challenge that sentence: He can present new evidence proving his innocence, 28 U.S.C. § 2255(h)(1), or take advantage of a new rule of constitutional law made retroactive by the Supreme Court, *id.* § 2255(h)(2). Or he can file a petition for an Original Writ from the Supreme Court, *id.* § 2241, or seek a pardon from the President, U.S. Const. Art. II, § 2, cl. 1; *compare Gilbert*, 640 F.3d at 1326–27 (Pryor, J., concurring) ("[I]f [Ezell Gilbert] suffers some 'injustice' that Congress has not empowered the courts to correct, the President can exercise his 'Power to grant Reprieves and Pardons.'"), *with* Elaine Silvestrini, *Obama Grants Clemency to Tampa Man*, Tampa Trib. (Dec. 19, 2013), *available at* http://tbo.com/news/crime/obama-grants-clemency-to-tampa-man-20131219/ (announcing clemency granted to Ezell Gilbert). But he cannot continue to challenge the legality of his sentence in our Court after he has exhausted the remedies available to him in section 2255.

*F. The Interpretation of the Savings Clause Varies Among the Circuit Courts, But Only the Ordinary Meaning of the Text of the Clause Matters.*

Our sister circuits have adopted varying interpretations of the savings clause, but few have considered the ordinary meaning of the text of the clause. A textual analysis would clean up this mess.

50

The majority of our sister circuits have adopted variations of the Seventh Circuit rule from *In re Davenport*. Most of those courts allow prisoners relief under the savings clause only if they can prove that they are actually innocent of their conviction, not their sentence. *See, e.g.*, *Wooten v. Cauley*, 677 F.3d 303, 307–08 (6th Cir. 2012) ("One way to establish factual innocence is to show an intervening change in the law that establishes the petitioner's actual innocence. This may be achieved by demonstrating (1) the existence of a new interpretation of statutory law, (2) which was issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) is retroactive, and (4) applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him." (internal quotation marks, citations, and alterations omitted)); *In re Smith*, 285 F.3d 6, 8 (D.C. Cir. 2002) ("Smith is actually innocent, having been convicted on the basis of an incorrect understanding of § 924(c), and § 2255 relief is unavailable to him."); *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001) ("[T]he savings clause of § 2255 applies to a claim (i) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion."); *In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000) ("§ 2255

51

is inadequate and ineffective to test the legality of a conviction when: (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law."). Other courts have adopted a similar approach and ask whether a petitioner had an earlier, "unobstructed" procedural opportunity to challenge his conviction. *See, e.g.*, *Abdullah v. Hedrick*, 392 F.3d 957, 963 (8th Cir. 2004) (denying relief because the "failure to seize that opportunity does not render § 2255 inadequate or ineffective to test the legality of his conviction.); *Ivy v. Pontesso*, 328 F.3d 1057, 1061 (9th Cir. 2003) ("[H]e has not been denied an unobstructed procedural opportunity to present it. For that reason, § 2255 does not provide an inadequate or ineffective remedy."). The Seventh Circuit later broadened its understanding of the savings clause to include claims that the sentencing court imposed a sentence exceeding the statutory maximum penalty, and other circuits have acknowledged that some prisoners might be entitled to relief under the savings clause for a sentencing claim. *See Brown v. Rios*, 696 F.3d 638, 644 (7th Cir. 2012) (granting relief under the savings clause for a petitioner erroneously sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e));

52

*see also, e.g.*, *Gibbs v. United States*, 655 F.3d 473, 478 (6th Cir. 2011) ("Even if the 'actual innocence' exception applies in some noncapital sentencing contexts, we believe that the exception does not permit prisoners to raise claims about guidelines calculations in a collateral attack."). But all of these circuit courts make the same mistake that we have made. They adopted wholesale the approach first devised by the Seventh Circuit without considering the ordinary meaning of the text of the savings clause.

The Second and Third Circuits have adopted an approach similar to those circuit courts, but they have stated explicitly that their approach is necessary to avoid a question about the constitutionality of section 2255. In *Treistman v. United State*s, the Second Circuit construed the savings clause "to provide that habeas corpus remains available to federal prisoners when § 2255 is not available and when the failure to allow for some form of collateral review would raise serious constitutional questions." 124 F.3d at 377. And the Third Circuit decided that the savings clause reached a prisoner's claim that he is "factually or legally innocent as a result of a previously unavailable statutory interpretation"; otherwise, "we would be faced with a thorny constitutional issue." *In re Dorsainvil*, 119 F.3d at 248. I agree with the Second and Third Circuits that the savings clause is constitutionally necessary, but not for the reasons that the Second and Third Circuits espoused.

Instead, as I explained above, the savings clause is constitutionally necessary to reach claims about a prisoner's detention that are not cognizable in section 2255.

Only the Tenth Circuit has considered the ordinary meaning of the savings clause. In *Prost v. Anderson*, the Tenth Circuit evaluated the words "inadequate or ineffective" and "test." 636 F.3d at 584–85. After evaluating these terms, the court concluded that "it is evident that a prisoner generally is entitled to only *one* adequate and effective opportunity to test the legality of his detention, in his *initial* § 2255 motion." *Id.* at 586. The Tenth Circuit adopted the rule that "a prisoner can proceed to § 2241 only if his initial § 2255 motion was *itself* inadequate or ineffective to the task of providing the petitioner with a *chance* to *test* his sentence or conviction." *Id.* at 587. But even the Tenth Circuit failed to consider the distinction between a challenge to the legality of a prisoner's "sentence," 28 U.S.C. § 2255(a), and a challenge to the legality of his "detention," *id.* § 2255(e). The rule of the Tenth Circuit, quoted above, replaces the word "detention" from the clause with "sentence or conviction." *Prost*, 636 F.3d at 587.

## CONCLUSION

Contrary to what many circuit courts following blindly in the wake of the Seventh Circuit in *Davenport* have concluded, the savings clause does not require a federal court to ask whether a claim about the legality of a conviction or sentence was foreclosed by circuit precedent when a prisoner filed his first motion to vacate

54

his sentence. A remedy by motion to vacate a sentence is both adequate and effective to test the legality of a prisoner's sentence in his sentencing court, even though Congress has erected procedural bars to limit his challenge. The savings clause opens the door for a prisoner to bring claims in a petition for habeas corpus that section 2255 cannot remedy—that is, claims challenging the execution of his sentence. A motion under section 2255 is neither adequate nor effective to remedy a prisoner's claim about a parole determination or the deprivation of good-time credits, for example. Only in those kinds of circumstances is a federal prisoner entitled to relief under the savings clause.

Our decision in *Bryant* is wrong, and we should do away with this "circuit-busting precedent" sham. *Bryant* does not even attempt to offer a plausible interpretation of the text of the savings clause. Our judicial oath requires that we respect the law—that is, the text enacted by the elected representatives of the American people—and not employ a judicial contrivance to get around provisions of the Antiterrorism and Effective Death Penalty Act.